Our third case for argument this morning is United States v. Ogoke, Appeal of Leonard. Mr. Groman. Good morning, Your Honors, and may it please the Court, I am Christopher Groman here arguing on behalf of the appellant, Michael Leonard. I'd like to take the sufficiency of the evidence argument first because I think it is the most important one in this case. Even viewing the evidence in the light most favorable to the prosecution, in this case, which was the District Court, there is simply not enough evidence to sustain the contempt convictions here. Under section 401, subsection 1, the evidence must show beyond a reasonable doubt both that Mr. Leonard acted intentionally and that his actions amounted to a material obstruction of justice. Under 401, subsection 3, the evidence must show that Mr. Leonard acted willfully. And on the record before this Court, on the record the District Court used, the evidence is simply not sufficient. And you agree the District Court judge could have imposed a sanction relative to either, theoretically? Correct. In the notice, the District Court actually cited all three subsections, 1, 2, and 3. It abandoned 2 in its opinion. He was given notice of all three. We will admit that. Turning to the material obstruction of justice, there is no evidence that this violation of the Court's pretrial order had any material effect on any part of this trial. It was a 15-second, a 10-second argument in closing that was immediately objected to, immediately sustained, and Mr. Leonard moved on. And then the prosecution got a chance in its rebuttal argument to take care of that argument and present the issue that Mr. Leonard could have called that witness again. And in fact, Mr. Leonard, in his own closing, admitted that he could have called that witness. On that record, there is just no material obstruction of justice here. On the intent issue and on the willfulness issue, again, I don't think there is sufficient evidence. Amicus points out that the District Court made a credibility determination, essentially calling Mr. Leonard a liar. And while there is certain deference given to credibility determinations, as the Supreme Court said in Doe v. Maywood Housing, even credibility determinations must be based on substantial evidence. And there is no substantial evidence here. There's essentially two possible theories of this case. There's the one that's adopted by the District Court. That is, Mr. Leonard had this grand conspiracy to sandbag the prosecution by waiting until closing argument to give this 10-second missing witness argument, and then he'd been plotting to do it all along. Or that, in the heat of a federal trial, trying to rebut the government's opening-closing argument, in which the government mentioned the witness that was missing, Mr. Okasana, who was a co-defendant, dozens of times, made a slip of judgment after preparing all night. And Mr. Leonard, a veteran of over 15 criminal trials in this district, over 300 federal cases overall, as he testified and as his co-counsel testified, they'd been preparing all night. The missing witness order was issued 10 weeks prior. It hadn't been an issue up until that point. And, in fact, the argument regarding the missing witness 10 weeks prior was about an entirely different witness. It was about a Mr. Okolaju who was indicted in a separate case, not about Mr. Okasana. It was the subject of the closing argument. Let me ask you, so Mr. Leonard engaged in a cross-examination of the case agent regarding Mr. Okasana? Yes. Doesn't that suggest that Mr. Leonard was laying a foundation for the comments in closing? No, and I'd like to make two points on that. First is Mr. Okasana was a hearsay declarant as part of the government's Santiago proffers. This court has held on many occasions, you're allowed to lay foundation in your cross-examination of witnesses that have interviewed hearsay declarants in Santiago proffers to argue that the hearsay declarant's testimony or pending testimony is not reliable. That's one point I'd like to make. Second is when the agent testified at the beginning of the case, Mr. Leonard rightfully expected the government to call Mr. Okasana as a witness. He had already pled guilty in the case. He had entered into a cooperation plea agreement with the government, which called for his testimony, and he appeared on the government's witness list. Based on that record, any criminal defense counsel would think that that witness would be called. And that leads me to a third point about the notice issues in this case. Our objection to the notice laid out by the district court isn't that it failed to state what the problem was. It did. It was the violation of the pretrial order. It wasn't that it failed to name the proper charge. It did. It's that at no point, either in that notice or during the contempt hearing, did the district court say what evidence it was going to rely upon. The district court did not ask. How much evidence does it need to cite? Due process requires that a criminal defendant, which is what Mr. Leonard is here, be given a chance to rebut the evidence used against him. If the district court had such issue with that line of cross-examination, which apparently is the only thing the district court could find in this record to support its theory, it should have put the question to Mr. Leonard, either in the notice or when he was testifying on the stand. He never got a meaningful opportunity to address that question like I just did for your honor. So do you think that all summary contempt procedures violate the Constitution? It seems clear that the district judge could have just banged the gavel and said, Mr. Leonard, you are in contempt. I am fining you $300. He could not have done that. Right on the spot. That's what Rule 42B is about. And I don't see any possible constitutional problem with that. He couldn't have done that in this case. Why not? Because there was no immediate need for a remedy. Well, beside the fact that it's perfectly obvious that you have to immediately deal with a violation of an order in limine, and with arguments being made to an ongoing jury, Rule 42 says you can do this. And the judge did immediately deal with it. By sustaining the objection? By excluding this line of argument. He might have dealt with it by declaring a mistrial. That was the risk, which he later emphasized. But put this to one side. Your argument, as I understand it, is that Rule 42B is unconstitutional because the judge does not, before banging the gavel in the case of a contempt in his presence, does not announce what evidence he's relying on. That, with respect to the notice argument, that is correct. But my argument is more. Now, as you know, the Supreme Court has upheld summary contempt. And the consequence must be that the Due Process Clause doesn't require notice of evidence before a judge can hold a lawyer in contempt for misconduct in open court. That's the necessary implication of upholding the summary contempt power. Correct. But summary contempt was not appropriate in this case. Subsection B could not be used in this case because of this Court's precedent. And the Supreme Court's precedent says subsection B can only be used when there's a compelling need for an immediate remedy, which there was not in this case. There is no need for an immediate contempt remedy, which is why the procedure is— There was a need for an immediate remedy, perhaps an immediate mistrial, caused by a lawyer's misconduct in trial. That's all that's required for summary contempt. In your understanding, Rule 42B might just as well be blanked out because you would say there's always a need for an immediate solution to the contemptuous conduct, but there's never a need for immediate contempt. There's often need for an immediate contempt. Take the law— No, there's a need for an immediate solution to the problem being caused by the contemptuous conduct. But it is always possible, in principle, for the judge to say, Mr. Leonard, you've caused a big problem for the Court, but I'll deal with you later. Let's deal with the trial now. And on your view, since it's always possible for a judge to say that, Rule 42B can never be used. That can't be right. No, that is not what my argument is. Take Lowry, for example. That is a case in which Judge Grady imposed summary contempt on the spot for repeated violations of a pretrial order regarding permissible lines of cross-examination. And there was a need for an immediate contempt in that case because it offended the dignity of the Court. Here, there was no— No, I don't get it. There was a need for an immediate remedy. There was a need for an immediate solution to the problem the lawyer's misbehavior was causing. There was no need to hold the lawyer in contempt at that instant. It's just that the problem caused by the misconduct had to be solved right then and there. Now, as I understand it, that's the point for contempt, if there's a problem that has to be solved right then and there. And it's caused by intentional misconduct. Rule 42B can be used. Well, then I go back to my point that there's not— But I don't understand how this has to do with the Constitution. If summary contempt is ever permissible, that has to mean that it's consistent with the Due Process Clause to hold somebody in contempt without an elaborate statement of evidence. Right? Isn't that a logical implication? That is a logical implication, but that doesn't mean that all process, namely a hearing, namely the appointment of a prosecutor as Congress has mandated under Rule A, should be swept away. I see that I'm into my rebuttal time. I will be back in a few minutes. Thank you, Your Honor. Certainly, counsel. Ms. Jones. Thank you, Your Honor. May it please the Court. I'll begin with sufficiency, since that's where Mr. Lerner's counsel focused most of his time. The evidence here was amply sufficient for both a violation of 401-1 and a violation of Section 401-3. The intent requirement for 401-1, as well as the willfulness requirement for 401-3, are both satisfied by recklessness. They're both satisfied by a finding that there was willful disregard of what the Court's order was. Here, it cannot be disputed that Mr. Lerner should have gone back and reviewed the order that the Court had entered, nor that he was familiar, before the order was ever entered in the first place, with this concept and with the prohibition on making a missing witness argument. For that reason, there was more than ample evidence for the Court to find that, at a minimum, he was reckless, but, in fact, was intentional with respect to his violation of that order. With respect to the material obstruction requirement for 401-1, this Court's decision in Lowry is directly on point and resolves the question. In Lowry, what the counsel did was exceeded the proper bounds of cross-examination with respect to a question that was asked that was prohibited by the Court. This Court held in Lowry that where a counsel does that, knowing that he can thereby gain an advantage in a criminal trial, because the criminal verdict of not guilty cannot be reversed, that that is an obstruction of justice. The same thing happened here, only later in the trial. Finally, he talked a good bit about the credibility determination on the sufficiency. Of course, the Court did have the advantage of seeing Mr. Leonard. Mr. Leonard's counsel was given the ability to offer evidence in whatever procedure he preferred. He came in and proposed that Mr. Leonard would testify, as well as that Mr. Leonard's co-counsel would testify. Both did so. The Court was present for both the closing argument, as well as the pretrial conference, and had more than ample reason to believe that he disbelieved Mr. Leonard's testimony. With respect to the procedures that were used here, Judge Easterbrook is correct, of course, that there is a long history of using summary contempt for direct contempt, contempt that occurred in the presence of the Court. The Court could have done so here, and the Court made the judgment that there was a compelling need to immediately respond to the contempt. However, the Court, taking a measured and appropriate response, determined that rather than give such an immediate remedy, which would risk prejudicing the criminal defendant, it would wait until after trial. The closing argument concluded on Friday. On Monday, the Court issued its order to show cause. There certainly is no reason that the Court could not and should not have given Mr. Leonard the additional process that he did, and given that he could have given him no process whatsoever. No, there is a reason. Rule 42A and Rule 42B specify alternative procedures, and the district judge didn't follow either one of them. That's a problem, surely. No, Your Honor, it's not a problem. You have a choice between A and B. The district judge chose C. That's a problem. Rule 42 nowhere in it says that the only methods are one that track exactly 42A and 42B. Long before the revision of the rules in 2002, courts have often applied an additional process beyond the minimum that's required in this Court, both in Griffin and in Lowry. In Lowry, the Court said perhaps you should have applied a little extra process. Just because you're allowed to dispense with procedure doesn't mean you must do so. And then in Griffin, the Court observed that the Court had actually given more process than was required by the rules. Of course, those were pre-the amendment, but the Fifth Circuit even now has a rule that despite the requirements of 42B, before a finding of summary contempt, there must always be some amount of notice and hearing. So it is well established to provide some additional process beyond what is due. Of course, Rule 42B speaks in the permissive. You may summarily punish, but does not suggest that that's the only method that the Court could use. With respect to the notice of the evidence to be used against him, of course, Judge Easterbrook, you're correct that it proves way too much. And if that were the requirement, then it would never be possible to hold in direct contempt. But in addition, the Court did say at the beginning of the process that he was taking judicial notice of the record. And of course, it was well known to Mr. Leonard that the only evidence that the Court would have to ascertain his intent would be his testimony at the hearing, and then what the judge had seen from Mr. Leonard on the record over the course of the trial. With respect to the motion for reconsideration, or it was called a motion to vacate, was ultimately filed and considered by the Court apparently de novo after the finding of contempt. And Mr. Leonard took that opportunity to lay out in his motion to vacate specific arguments pertaining to every specific piece of evidence that the judge relied on. The judge reaffirmed his order and found that none of that altered his view. And so if there was any error in the amount of notice, it was both harmless and, in fact, cured by the Court's de novo review of its order. With respect to the notice in addition, Mr. Leonard's counsel explains that Mr. Leonard has offered alternative explanations for the cross-examination that pertains to Mr. Okusanya. But none of those explain why Mr. Leonard would have wanted to elicit the testimony about the amount of the government's contact with Mr. Okusanya, other than to create a groundwork for arguing that the government could have talked to him more had they chosen to do so. His arguments that the government expected him to be called do not explain why that would have been particularly effective impeachment, to imply that the government could have spoken to Mr. Okusanya before that. I do want to briefly touch on the standard of review, which is here extremely deferential, both because none of these challenges were raised in the district court. The district court asked Mr. Leonard's counsel how he wished to proceed. He proposed the process. He asked him if he needed additional information regarding any of the charges. Mr. Leonard's counsel said no. They had all the information that they needed. And then proceeded to put on evidence that was not cross-examined or no contrary evidence was presented. Given that, Mr. Leonard, as to certain of these errors, either invited the error or waived his complaint because he made a strategic decision to proceed without someone there cross-examining him and pointing out the flaws in his statements. With respect to the notice, he at a minimum forfeited any further information on the notice because he told the court that he did not need any further information. If the court has no further questions, I think that covers what I'd like to say. Looks like we do not. Thank you. Thank you. Mr. Grohman, anything further? Briefly, Your Honor. Your Honor is right that the district court did choose Route C instead of A or B. And I believe that when Congress amended the rule in 2002, it said when you choose to provide notice at a hearing, here's how you do it. And it's in Rule A and it requires the appointment of a prosecutor. I'd like to make two last points. The next question in sequence, though, is what's the harm? If the district court could have used Rule 42B, what's the harm from offering Leonard an extra opportunity to explain himself? Because I don't think it was a meaningful opportunity to explain himself, given the district court's ruling in this case. But under 42B, he didn't need to provide any opportunity anyway. Do you suggest he forfeited 42B because he did not impose the sanction immediately? No, I suggest that you cannot use 42B if you are not allowed to act under this circuit's precedent immediately. I think that's what your argument comes down to. If you can't persuade us that the district court was forbidden to use Rule 42B, it looks like all that happened here is that a judge who could have used Rule 42B went the extra mile and allowed your client more opportunity for explanation. I do not think he was allowed to use Rule 42B. Okay, I think that's where we come down to. We need to decide that issue. It's simply because there was no compelling need for an immediate contempt sanction. That's the difference. There may have been a compelling need to... Could you tell me what, in your view, would be a case where there is a compelling need for an immediate contempt sanction as opposed to immediately solving the problem that was caused by the contempt? Yes, there's an immediate need for an immediate contempt sanction when the dignity of the court is at issue, as it was in Lowry where the court made... That sounds like the worst case for the use of Rule 42B because when you're talking about the dignity of the court, it looks like the judge's ire is involved, that it's a personal challenge, and judges shouldn't decide cases where their personal attributes are on the line. That's when you need Rule 42A. Well, I think that's exactly what happened here. I think the district court judge took this as a personal challenge. Look, I don't think you're understanding the nature of my question. You have identified as the core of the proper use of Rule 42B a class of situations that sounds like it would be inappropriate for the insulted judge to be the one making the decision. That's when you need Rule 42A. You need Rule 42A when the district court makes the decision then and there that there is no need to impose sanctions on the spouse. The district court chose in this case. I'd like to leave with this thought. This case is not about a $300 fine in a criminal contempt case. This case is about a lawyer's reputation. A lawyer's reputation that's been unsullied for over 25 years of practice. And reputations matter in this business. The criminal defense bar is extremely small. Reputations matter before courts. It matters before the government. And it matters before clients. Yes, thank you, counsel. Ms. Johnson, we appreciate your willingness and that of your law firm to accept the role that we asked you to undertake as amicus curiae in the defense of the judgment. Thank you very much. The case is taken under revising.